IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPHINE KNIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:22-0220-MU |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Josephine Knight brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 7 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 8. Upon consideration of the administrative record, Knight's brief, and the

commissioner's brief, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I.  PROCEDURAL HISTORY

Knight applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on March 5, 2020, alleging disability beginning on February 23, 2018. (PageID. 248-52, 271). Her application was denied at the initial level of administrative review on July 10, 2020. (PageID. 154-59). She filed a Request for Reconsideration on July 13, 2020, and that request was denied on September 22, 2020. (PageID. 162-66). On November 3, 2020, Knight requested a hearing by an Administrative Law Judge (ALJ). (PageID. 167-69). After a hearing was held on May 19, 2021 (PageID. 87-112), the ALJ issued an unfavorable decision finding that Knight was not under a disability from the alleged onset date, February 23, 2018, through the date of the decision, June 30, 2021. (PageID. 52-76). Knight appealed the ALJ's decision to the Appeals Council, and the Appeals Council granted review on February 3, 2022. (PageID. 242-46).  On April 13, 2022, the Appeals Council issued an unfavorable decision finding that Knight was not under disability from the alleged onset date, February 27, 2018, through the date of the ALJ's decision. (PageID. 42-49).

After exhausting his administrative remedies, Knight sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on September 8, 2022. (Docs. 12, 13). Both

---

[1]   Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Docs. 7, 8 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

parties filed briefs setting forth their respective positions. (Docs. 15, 17). The parties jointly waved oral arguments on December 13, 2022. (Doc. 18).

## II.  CLAIM ON APPEAL

Knight alleges that the Appeals Council erred in adopting the decision of the ALJ, which was based on a medical expert opinion that was not supported by substantial evidence, in violation of 20 C.F.R. § 404.1520c. (PageID. 967).

## III. BACKGROUND FACTS

Knight, who was born on June 8, 1975, was almost 45 years old at the time she filed her claim for disability insurance benefits. (PageID. 254). Knight initially alleged disability due to depression, anxiety, chronic pain, back, carpal tunnel both hands, left shoulder, headaches, neck, muscle spasms on left side, arthritis, and chronic pain on right side. (PageID. 275).  Knight graduated from high school and attended three years of college. (PageID. 276). Prior to stopping work February 23, 2018, Knight was a stocker at a retail store, where she unloaded trucks and stocked groceries. (PageID. 277). She has also previously been employed as a hair stylist, factory line worker, packer, and construction material handler.  (PageID. 297-302). In her Function Report, which she completed on May 21, 2020, she stated that she had problems putting on shirts and dresses, took showers due to difficulty getting out of the bathtub, and could not lift her arm to wash or braid her own hair.  (PageID. 316). She stated she made her bed every day and it took ten minutes to do so.  She stated that her daughter prepared her meals for her, and her sons did other household chores, like mopping and taking out the trash.  (PageID. 317-18). She stated she shopped for groceries about once a month, for approximately two hours, when her children take her to the store. She stated she

3

had shoulder pain every day, has difficulty picking up change, and her only social activities were talking with her children and mother and going grocery shopping once a month. (PageID. 318-319).

Knight completed a Pain Questionnaire which stated she had headaches, and pain in her left shoulder, left arm, left hand, and fingers on her left hand. Sometimes the pain would go from her neck to her shoulder or to her back. Lying down with heat or ice would sometimes ease the pain. She was prescribed diclofenac, which did not totally relieve the pain but did cause drowsiness. She would use ice packs, heating pads, and Tylenol as well. The pain caused her to stop playing sports, exercising, cooking, and socializing. She would walk for thirty minutes a day and talked to her family. She stated she was in pain every single day. (PageID. 306-07).

At the ALJ hearing, Knight testified that she could lift only a gallon of milk with her left hand. (PageID. 91-92). She had numbness and tingling in her hands, tended to drop things, and had difficulty unscrewing a bottle of water with her left hand. (PageID. 93). She testified she had problems with buttons and tended to limp or wobble when walking and that she had swelling in legs, ankle, and feet. (PageID. 94). She testified that she continued to have shoulder pain, could not lift her arm over her head, had to take showers because she could not get out of the tub, and had difficulty putting on her bra. (PageID. 95). She had headaches five days a week and tends to lie down approximately five hours during the day. (PageID. 96-97). She further testified that she could walk the length of a football field and stand for about 30 minutes. (PageID. 97). She also testified that sometimes her leg would "go to sleep" when she was standing or sitting. (PageID. 97). She could not do any cleaning, mopping, or sweeping because of

her hands.  (PageID. 97).  She testified she drives to the local gas station, which is ten minutes away but could not cook, other than occasionally using the microwave or making a sandwich.  (PageID. 98).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ determined that Knight had not been under a disability from the alleged onset date, February 23, 2018, though the date of the decision, June 30, 2021, and thus, was not entitled to benefits. (PageID. 78). At step one of the five-step sequential evaluation, the ALJ found that Knight had not engaged in SGA since February 23, 2018, the alleged onset date. (PageID. 57). Therefore, he proceeded to an evaluation of steps two and three. The ALJ found that, during the relevant period, Knight had severe impairments of obesity, bursitis left shoulder rotator cuff surgery with arthralgias left shoulder, tendonitis left upper extremity, hypertension, mild carpal tunnel syndrome, insomnia, gastrointestinal reflux disease (GERD), vitamin D deficiency. (PageID. 57-62). After considering the entire record, the ALJ concluded Knight had the residual functional capacity ("RFC") to perform light work except that she could lift and carry 10 pounds frequently and lift and carry 20 pounds occasionally.  She could sit for 6 hours in an 8-hour workday.  She could occasionally lift left arm above her head and the right arm would not be significantly limited.  Knight could occasionally use the fingers for fine movements of gripping, grasping, feeling, fingering, and fine manipulation on the right due to carpal tunnel but would be occasional, and on the left could be performed more frequently.  She could occasionally climb stairs, and other postural functions would be occasional for stooping, kneeling, crawling, and crouching.  Knight should avoid exposure to

unprotected heights and moving mechanical parts, as well as extreme temperature and vibration with the left upper extremity. (PageID. 61-75). After setting forth his RFC, the ALJ determined that Knight was unable to perform any past relevant work. (PageID. 75). However, considering her age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Knight could perform, and therefore, found that Knight was not disabled within the meaning of the Act. (PageID. 75-76).

## V. APPEALS COUNCIL'S DECISION

The Appeals Council adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable.  The Appeals Counsel further adopted the ALJ's findings or conclusions regarding whether Knight is disabled, specifying that it agreed with the ALJ's sequential evaluation for the period beginning February 23, 2018.  (PageID. 45-47).

## VI. DISCUSSION

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). "For DIB claims, a claimant is eligible for benefits where [she] demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g).

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

According to Knight, the ALJ's RFC determination was not supported by substantial evidence because the ALJ incorrectly based the RFC assessment and decision on the testimony of Dr. Steven Golub,[2] whose opinion was not based on the entire evidence of record (namely, Dr. Golub's opinion referenced objective diagnostic test results without discussing physical therapy records and medical examinations), while the ALJ rejected the opinion of Knight's treating physician, Dr. Huey Kidd, as being inconsistent with the evidence. (PageID. 974-81). The regulations applicable to the evaluation of medical evidence provide that the ALJ will consider the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which

---

[2] The decision of the Appeals Council, not the ALJ's decision, is the Commissioner's final decision. However, the Appeals Council specifically relied on and accepted the ALJ's RFC findings, without independent analysis or explanation. (PageID. 45-49). It is thus assumed that the Appeals Council implicitly adopted the ALJ's basis for the RFC. For this reason, the undersigned turns to the ALJ's decision to determine whether it is supported by substantial evidence.

8

includes length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and examining relationship), (4) specialization, and (5) other factors. *See* 20 C.F.R. § 404.1520c(c). The most important factors to be considered by the ALJ in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 1520c(b)(2). Therefore, the ALJ is required to explain how he or she considered the supportability and consistency factors in the written decision but is not required to articulate how the other factors were considered. *Id.* Because many claims have voluminous records from multiple sources, the ALJ is not required to articulate how he or she considered each medical opinion from one medical source individually. 20 C.F.R. § 1520c(b)(1).

Knight contends that the ALJ's rejection of Dr. Kidd's opinion was based on misrepresentation and "cherry picking" of the evidence because the ALJ failed to consider the physical therapy records in full, as well as treating records.  (PageID. 977). "An ALJ 'is under no obligation to "bridge" every piece of evidence he finds inconsistent with a specific opinion. [ ] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review.'" *Poole v. Kijakazi,* 2022 WL 1651196, at *3 (M.D. Ala. May 24, 2022) (quoting *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021)); *see also Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (holding that ALJ is not required to discuss every piece of evidence as long as the reviewing court can surmise that the ALJ considered the plaintiff's medical condition as a whole).  Here, the ALJ complied with the applicable regulations.

In making his finding, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (PageID. 63). The ALJ "also considered the medial opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c. (PageID. 63).  In so doing, the ALJ found Knight's statements concerning the intensity, persistence, and limiting effects of symptoms to be inconsistent with the record evidence, and further found Dr. Huey Kidd's opinions to be inconsistent with the evidence of record and generally unpersuasive.  (PageID. 65-74).

As noted by the ALJ, Dr. Kidd provided a Clinical Assessment of Pain Form on June 16, 2021, in which he opined that Knight has pain that was profound and intractable, virtually incapacitating.  (PageID. 70, 957).  After setting forth a summary of the completed form, the ALJ made the following findings concerning the functional limitations assessed by Dr. Kidd:

> The undersigned finds Dr. Kidd's assessments are inconsistent with the evidence of record, including Dr. Kidd's reports.  Specifically, when seen at Huntsville Hospital from April 21, 2018 through June 18, 2018 for her left shoulder and left 3rd digit she reported improvement the left shoulder external rotation (B2F/42).  Her ninth visit shows that the claimant reported the ability to perform all activities of daily living with no pain in the left shoulder (B2F/43).  Furthermore Dr. Kidd treating records do not show that the claimant had any complaints of pain that was profound, intractable, or virtually incapacitating to the claimant.  She did not require bedrest due to her pain and had no severe side effects of medication that caused limitations with even the most simple everyday tasks.  In fact, on day Dr. Kidd completed these forms he examined the claimant (Exhibit B28F).  On general appearance, Dr. Kidd observed that the claimant was normal.  The neurologic exam showed normal level of consciousness, normal speech, and normal gait and stance (B28F/4).  Dr. Kidd prescribed limited medications Gabapentin and Cyclobenzaprine.  He did not recommended [sic] hospitalization or any injection for the claimant's pain.

10

(PageID. 70).

Review of the record reveals the ALJ misrepresented or failed to cite certain evidence in this finding that leaned in favor of Dr. Kidd's opinion.  In particular, the Huntsville Hospital record cited by the ALJ actually reads, "Patient with decrease in left hand grip and pinch strength since evaluation.  Improvement in left shoulder external rotation only but declined in all other motion.  Continues to report pain with all functional task[s], especially getting dressed, any activity requiring gripping with left hand and continues to have interruption in sleep due to shoulder pain." (PageID. 482). The note related to Knight's ninth visit states, "1. Pt reports ability to perform all ADLs with no [pain] in [left] shoulder – not met. 2. Pt reports decreased sleep disturbances to less than 25% - not met. 3. Pt reports ability to perform sweeping with min[imal] difficulty – not met. 4. Increase [left] shoulder [active range of motion] to [within functional limitations] in all planes – not met. 5. Increase [left] 3rd digital flexion and extension to [within functional limitations] – not met. (PageID. 483). The Drayer Physical Therapy records cited by the ALJ highlighted Knight's improvements and progress while not identifying her noted limitations.  (PageID. 67).  For instance, Knight's July 26, 2018, assessment is described by the ALJ as showing "that the claimant appeared motivated and was able to perform exercises correctly.  Her progress towards goals was good (B3F/6).  She had good improvement with active range of motion (AROM) of left shoulder as seen in objective section [with] decreased upper trapezius (UT) compensation and demonstrating improved scapular stability.  She had no complaints of pain with exercises but reported moderate-severe fatigue in left shoulder with repetitive overhead motion (B3F/6)." (PageID. 67).  The ALJ,

however, did not reference the table setting out the goals that were included in that same note, which included the following findings: pain "[at] best 4/10, [at] worst 6/10"; "reports using arm more but pain [with] repetitive motions or reaching away from body"; "able to perform independently but pain [with] reaching behind her back or reaching [overhead] to don/doff shirt"; "unable [to reach overhead] but [active range of motion] has increased but unable to lift weight item [overhead] due to pain and weakness". (PageID. 489).  Also, Knight contends the ALJ misrepresented Dr. Kidd's treating records by failing to reference his May 17, 2021 evaluation which indicated Knight experienced pain with active motion to the left shoulder.  (PageID. 976, 950).

Knight's contentions fall short, however. The ALJ provided a sufficient rationale linking substantial record evidence to the legal conclusions reached.' *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015).  The ALJ set forth several examples of inconsistencies in Dr. Kidd's opinion and other opinion evidence and prior administrative findings of record which were persuasive for light work (PageID. 74, 125-27, 144-46, 617), including the opinion of Dr. Golub, the impartial medical expert who testified during the hearing. (PageID. 64-65, 99-103).  Likewise, Dr. Kidd's opinion is inconsistent with the results of repeated diagnostic imaging/scans evidence in the record. (PageID. 613, 614, 615, 616). Additionally, based on a complete review of the medical records and the thorough overview of the records contained in the ALJ's Decision, *see* PageID. 63-75, substantial evidence supports his conclusion that Dr. Kidd's opinions were inconsistent with the overall objective medical evidence. It is clear to the Court that the ALJ considered Knight's medical condition as a whole in assessing her RFC. *See Dyer*, 395 F.3d at 1211.  Therefore, the Court finds that the ALJ did not

err by its misrepresentation of certain physical therapy and treating records in assessing the persuasiveness of medical opinions.

## CONCLUSION

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the entire transcript and considered the arguments made by Knight, the Court finds that the ALJ's determination that Knight was not disabled is supported by substantial evidence and based on proper legal standards.

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **26th** day of **January, 2023**.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**